Scott & Dawson, of Fort Payne, for appellants.

C. A. Wolfes, of Fort Payne, for appellee.

18 So.2d 89

## STRANGE v. TREECE.

### 7 Div. 750.

Supreme Court of Alabama.

May 18, 1944.

BROWN, Justice.

This appeal is by the defendant from a decree of the Circuit Court setting aside and annulling a deed executed by the appellee, Mrs. J. A. Treece, to her daughter, the appellant, Ethel M. Strange, on the 6th day of December, 1934. The deed is in form and substance, ex facie, a deed of bargain and sale, on a recited consideration of twenty-five dollars cash in hand paid, "and the further consideration of love and affection which grantor has for grantee."

The bill as last amended, alleges as grounds for the relief sought:

"That several years ago complainant executed to the defendant, Ethel Strange, a deed to the following described real estate, situated in DeKalb County, Alabama, towit [describing the lands as described in the deed], which deed was never delivered by complainant to the grantee named therein, but was placed by complainant in a trunk belonging to complainant, who was then living on said property, with the understanding with the grantee that the deed was to be delivered when complainant died. Complainant made the deed to Ethel Strange, who was one of her daughters upon her agreement that she would support and care for the complainant during the remainder of her life, pay the taxes on said property each year thereafter, and pay the Federal Land Bank mortgage on said property as the installments became due.

"That shortly before this suit was filed complainant missed the said deed from her trunk and the defendants advised her that they had taken possession of it; that without her knowledge and consent the defendants filed the deed for record in the probate office of DeKalb County, Alabama, and the same is recorded in deed book 86, page 201, and a copy of the deed as recorded is made a part of this bill of complaint as Exhibit 'A' hereto.

"Complainant further shows unto the court that the defendants are in possession of said property and the defendant, Ethel Strange, has not since the execution of said deed supported and cared for the complainant, but on the contrary, she and her husband, Rufus Strange, have so mistreated the complainant and failed to support and care for her that she has had to go to live with another daughter; the defendant,

Ethel Strange, has not paid any taxes on said property and has made no payments on the Federal Land Bank mortgage, but all of the taxes and mortgage installments have been paid by the complainant since the execution of said deed.

"Complainant further shows unto the court that she signed said deed with the distinct agreement with the grantee named therein, her daughter, Ethel Strange, that the deed was not to be delivered to her until her death and unless the said Ethel Strange cared for and supported the complainant during the remainder of her life and kept the taxes and mortgage installments paid; that she, the said Ethel Strange, or the defendant, Rufus Strange, for her, took possession of said deed sometime after it was made, without the knowledge or consent of the complainant, the deed at the time it was so taken being in the possession of the complainant."

The defendants' answer alleges:

"That the complainant has made her home with, lived with and been supported by the defendants since December 3, 1920. That all the work she has done since said time she received pay for and saved said money until the date of the making of the deed in question. That at said time and from time to time theretofore she had loaned to John Alexander what money she could accumulate and that in payment for that money, said Alexander deeded to her the lands described in the bill, which was at the time incumbered by a Federal Land Bank mortgage. That the complainant of her own free will and accord and without any persuasion or compulsion on the part of the defendant Ethel Strange deeded said land to the said Ethel Strange and these defendants immediately went upon said lands. That said deed was delivered by the complainant to Ethel Strange and was in her possession and under her control from the date it was executed until the date this bill was filed. That it was agreed and understood that the defendant Ethel Strange would have to pay the Federal Land Bank mortgage in order to save her interest in the lands and the complainant remained with the defendants and lived in their home until soon before the filing of this bill when she became dissatisfied and left the home.

"That after the making of the deed in question and before the complainant left the home of the defendants she cultivated land on the place, by the aid of the defendants

and raised cotton each year and with said cotton she paid the Federal Land Bank loan, that the complainant during the time she was doing this work was being boarded and clothed and cared for by the defendants. That the defendant Rufus Strange during said time built a house on said lands and made other improvements on the place including a barn, a chicken house and that the place is now worth more money than it was at the time said deed was made. That said deed contained no provision for the care and support of the complainant and there was no understanding to that effect except that the complainant had always lived with the defendant Ethel Strange and it was presumed that she would continue to do so."

The case was submitted on evidence of witnesses taken in short hand by Gordon L. Evatt, by agreement of the parties, transcribed and filed as depositions in the case, and the documentary evidence.

After careful consideration of the evidence we are constrained to the conclusion that the complainant has failed to meet and carry the burden of proof imposed on her by the averments of the bill, and that the great weight of the evidence supports the allegations of the defendants' answer.

The complainant testified:

"Q. Did you have anything; agreement with Ethel about what you were making the deed for? A. No.

"Q. Didn't have an agreement with her at all? A. I said it was mine as long as I lived.

"Q. You did have an agreement? A. Just what I told her.

"Q. What arrangements about the Federal Land Bank payments? A. I paid it."

She further testified that she turned the deed over to her daughter a day or two after she got it.

The evidence further shows that one Alexander had become indebted to complainant for money loaned and was unable to repay the loan and offered to deed the land to complainant in payment of his debt; that complainant told her daughter and husband of this offer, and for them to go and look at the land and if Ethel wanted it she would give it to her as a home. The complainant had lived with Ethel and her husband continuously since they married as a member of their family and was sup-

ported by them, and continued to so live until a short time before filing of the bill.

The testimony of the witness Johnson, the draftsman who prepared the deed, is indefinite and uncertain except his statement, "She was to make her home with them, I am sure that was part of the conditions."

The decree of the circuit court is therefore reversed and one here rendered dismissing the bill.

Reversed and rendered.

GARDNER, C. J., and THOMAS, FOSTER, LIVINGSTON, and STAKELY, JJ., concur.